In The United States District Court

Of The State of Georgia

Ricky Lamar Hogan, Personally Individually and at All Times on Behalf of Himself

Plaintiff

Verses.

The State of Georgia, A Governmental Municipality Corporation and ("Active") Continuous Criminal Enterprise Through Patterns of Racketeering Activities, ("is") Being sued Personally, Individually and Within It's Official Capacity as an State Of Georgia, Governmental Municipality, Corporation and as Active, Continuous Criminal Enterprise. "ET. AL"

Defendants.

Civil Action Docket

No:_____

Federal Racketeering, Domestic Terrorism, Conspiracy, civil, Criminal Human Rights Wire Fraud, Attempted Murder by Torture Gross Deliberate Indifference, Forced Human Experimentations and Violations of Federally Protected Rights Thereunder the Eighth (8th) amendment and Violations of the United States Human Rights Treaty and United States Convention against Torture of Prisoners, Federal Civil Action Complaint and Demand For Trial:

# Exhibit-A

*Please Serve*

Ricky Lamar Hogan #65335
Washington State Prison
Post Office Box 206
Davisboro, Georgia 31018

## STATE OF GEORGIA WASHINGTON COUNTY

**SWORN AFFIDAVIT**

Affiant's Name: Ricky Lamar Hogan #65335

Address: <u>Washington State Prison, P.O. Box 206</u>

City: <u>Davisboro</u>            State: <u>Georgia</u>            ZIP: <u>31018</u>

 Pursuant to 28 U.S.C. 1746, the above-named Affiant hereby certifies, deposes, and states that the foregoing facts are, to the best of his knowledge, true and correct.

 Affiant further affirms that he is over 18 years of age and is competent to testify in this matter. Affiant submits that this Affidavit is based on his personal knowledge of its contents and offers his sworn testimony for use in this and any other lawful matter and/or proceeding:

 From on or about January/February 2003 and continuing to date within the Northern, Middle and Southern Districts of the State of Georgia, the herein named Defendants, former Governors Nathan Deal, Sonny Purdue, former Lt. Governors Casey Cagle, mark Taylor, Georgia Attorney Generals Thurbert E. Baker, Samuel Olens, Assistant State Attorney Generals John C. Jones, Georgia Department of Corrections Commissioner Gregory C. Dozier, Former Georgia Department of Corrections Commissioners Lanson Newsome, Brian Owens, James E. Donald, Jim Wetherington, Georgia Department of Corrections Inmate Affairs Officers Sarah Draper, Edmund J. Bazar, Jr., Derrick Schofield, Tom Sittnick, Raymond Head, William F. Amided, Mark E. Guzz; Former Georgia State Prison Wardens, Sandra S. Moore, Steve Upton, Steve Roberts, Bruce Chapman and Hugh Smith, Georgia Department of Corrections Medical Doctor Terry L. Jones, State of Georgia's Department of Corrections contracted medical services provider Doctor Joseph Paul Giles, Georgia Department of Corrections Medical Director Sharon Lewis, State of Georgia's Correctional health Care Medical Director Billy Nichols, State of Georgia's Correctional Health Executive Directors of Adult Health J. Chad

Knight, Ben Harvill, Charlene Martin, Sandi Loy, Sandra Duncan, Meadows Regional Medical Center medical nurse (John Doe One(1)), Meadows Regional Medical Center Medical Chief of Staff (John Doe Two (2)), Meadows Regional Medical Center Medical Assistants (John Doe Three (3)), State of Georgia's Composite Medical Board Director Lashan Hughes, State Composite Medical Board Investigators (John Doe Four (4)), and the State of Georgia Regents University System, and all persons acting in concert or participation with them, while at all times acting under color of state laws, and ("their") vested authority as Governors, Chief Executive Officers of the State of Georgia, Lt. Governors, Deputy Chief Executive Officers of the State of Georgia, State Attorney Generals, Chief Law Officers, Legal Counsel of the State of Georgia's State Department of Law, commissioners of the State of Georgia's Department of Corrections, State of Georgia's Department of Corrections ("contracted medical services provider – Meadows Regional Medical Center"); prison wardens, state prison regional directors; medical chief of staff; medical directors; medical doctors; medical nurses, medical assistants; deputy warden of security, deputy warden of care and treatment; ("their") successors in office, agents, actors, correctional officers, state officials, staff, personnel, employees and all other persons, individuals, companies, agencies, departments, board, private corporations, organized criminal elements and ("active/continuous") criminal enterprises, acting within concert and active participation with them, and whom at all times herein used that of interstate commerce state governmental facilities which they control, operate and maintain, i.e. (The Governor's Office, The State Department of Law, The Georgia Department of Corrections, Augusta Medical State Prison, The Medical College of Georgia, The Georgia State Prison at Reidsville, Johnson State Prison, Baldwin State Prison, Riverbend Correctional Facility, Calhoun State Prison, Washington State Prison, Georgia Department of Corrections Medical Directors, State Composite Medicals Board, Georgia Correctional Health Care Services, Georgia Regents University System; The State Board of Pardons and Paroles, and the State of Georgia, et.al.") to provide, and whom has and are continuously providing without lawful authority non-stop criminal, unlawful, illegal and unconstitutional material support, assistance, security, state sponsored ("safe housing"), state sponsored legal advice, state sponsored protections, aid, state sponsored staff, agents, employees, and whom all were

and are now continuously engaged within and active, RICO, criminal, civil and human rights conspiracies. "AND OTHER ACTS DANGEROUS TO THE LIFE of the Plaintiff Ricky Lamar Hogan! Without lawful authority and through acts of fraud, fraudulent representations and by continuous acts of defrauding the plaintiff. The named defendants conspired to medically/internally implant the plaintiff with their criminal enterprised remanufactured, redeveloped and criminally enterprised redesigned electronically controlled ("Tracking Devices"). Tracking devices originally manufactured and developed for the implantation in and for tracking livestock and household pets such as dogs and cats, etc. and whom conspired to Injure, Oppress, Continuously Threaten, Intimidate and Continuously Harm and Hurt the named Plaintiff a prisoner under the custody, control and authority of the state of Georgia's state prison system and whom is at all times a legally born United States Citizen within the free exercise and enjoyment of His Rights and privilege secured to Him by the Constitution and laws of the United States not to be criminally, illegally nor unconstitutionally subjected to without lawful authority;

A) "Forced Human Implantations of Experimental Electronic Devices;

B) Forced Human Experimentation;

C) Cruel, Inhumane Punishment; Electronic Stalking, Harassment;

D) Cruel and Unusual Punishment;

E) Pain and Suffering, Mental, Mental and Emotional Abuse;

F) Wire Fraud;

G) Aggravated Assault;

H) Aggravated Battery;

I) Attempted Murder by Torture;

J) Criminal and Civil Human Rights Conspiracy;

K) Identity Fraud;

L) Gross Deliberate Indifference;

M) Violations of Their Oath of Offices;

N) Not to be Deprived of Life Without Due Process of Law, civil and human rights conspiracies, and

O) Not to be Deprived of Rights thereunder the Eighth (8th) Amendment to the United States Constitution."

It was and is now the plan and purpose of the Defendants ("continuous, active ongoing conspiracies") that they, ("the conspirators") would without any regards for the plaintiff's life or well-being and without lawful authority, secretively implanted the Plaintiff during a State of Georgia arranged, fraudulent and criminally organized medical procedures with Radio Frequency Identification Devices ("R.F.I.D."), which was to be performed by the State of Georgia contracted medical service provider Dr. Joseph Paul Giles, M.D., and the medical operational procedures, ("Electronic Implantation") was to occur at Meadows Regional Medical Center Incorporated at Lyons, Georgia for long-term electronic experimentation while at all times inside the physical internal body of the Plaintiff for their (the Defendants) and their criminal enterprises monetary gain and profit sharing of which criminal and unconstitutional electronic device implantation, forced human experimentation and monetary gain and profit sharing the conspirators had actual and or prior knowledge.

**"OVERT-ACTS"**

In furtherance of the aforesaid, RICO, civil, criminal and human rights conspiracies, and to accomplish its, ("their") criminal objectives, the following overt acts, ("among other"), were and are continuously now being committed within the Southern, Middle and Northern Districts of the State of Georgia:

1) On or about January or February 2003 and continuing to date at the Georgia State Prison at Reidsville, Georgia some of the conspirators and all other persons, and individuals acting within concert and active, continuous participation with them through their meeting of the minds,

willful, deliberate and purposeful planning and ("aggressive evil intent") and for their monetary gains and profit, conspired to conduct, and whom are now continuing to conduct the affairs and official business of the State of Georgia, a State Governmental municipality corporation, it's state functions, state governmental units, entities, state departments, state prisons, state prison medical facilities, state governmental contracted medical services providers, boards, etc. which they represents and whom are continuing to represent to date, as active, continuous, on-going criminal enterprises by and through its agents and actors, willful engagements in commission of unlawful, illegal, criminal acts, patterns, and the predicated offenses of Racketeering activities, and by the conspirators continuous reasons of domestic terrorism, ("and or acts dangerous to the physical, human life of the Plaintiff") and ("their") continuous, clearly established violations of plaintiffs rights thereunder the United States convention against the torture and other cruel, inhumane and degrading treatment and punishment of and or against prisoners. Some of the conspirators discussed secretly implanting the Plaintiff with the criminal enterprises electronic controlled devices for long-term experimentation because the Plaintiff served a sentence of life imprisonment with the possibility of parole release.

2) On or about February or March 2003, prior to the Plaintiff being implanted with the criminal enterprises electronically controlled devices, into his human/internal body at Meadows Regional Medical Center some of the conspirators, at a state departmental meeting discussed the upcoming device implantations and agreed to provide material support, aid and state of Georgia protection to help their co-conspirators unlawfully conceal the same.

3) On or about March 13th, 2013, at a Meadows Regional Medical Center, Doctor Joseph Paul Giles, Meadows Medical Chief of Staff, nurse, medical assistants and other organized criminal elements with the material support of the state of Georgia's protection and criminal aid from co-conspirators, state actors, officials, agents and state personnel, decided to and so in fact, by and through repeated predicate offenses of defrauding the Plaintiff, actual fraud , and their repeated acts of fraudulent representations. The conspirators without lawful authority secretly implanted,

medically inserted internally inside of Plaintiff's human body, ("criminal enterprise redesigned, developed, mini-experimental, electronically controlled and operational electronic devices") and identified as .... ["R.F.I.D."] devices")'.

## *WHAT IS R.F.I.D.*

"R.F.I.D. stands for Radio Frequency Identification. R.F.I.D. refers to small electronic devices that consist of a small chip and an antenna. The chip typically is capable of "carrying 2,000 bytes" of data or less. The R.F.I.D. devices serves the very same purpose as a bar code or "magnetic strip" on the back of a credit card or ATM card. It provides a unique identifier for that object and just as a bar code or magnetic strip must be scanned to get the information, the R.F.I.D. device must be scanned to retrieve the identifying information....."

## *VERCHIP*

A VERCHIP is a "Rice Sized" Radio Frequency Identification Micro Chip, "designed for tracking everything from products to peoples". Designed and Created by "Applied Digital Solutions".

The criminally, secretly implanted ("criminal enterprises") experimental electronically controlled and operational electronic devices, factually and unquestionably consist of several, secretively developed and ("active operational") electronically controlled ("High Tech") features from within, inside of ("Plaintiffs") body, which criminally, illegally and unlawfully permits the conspirators without lawful authority ("Remotely") from unknown locations, range, miles and or the actual physical distances to:

"Without lawful authority, or detection conduct secretively

controlled ("Secret") experimental testing of the now implanted

devices, which consists of and which does now, in fact

consists of the conspirators:

1) *Electronically controlled monitoring of any and all of the Plaintiff's physical interactions and verbal conversations with others.*

2) *Electronically controlled monitoring of Plaintiff's Human, internal functions, physical reactions and the Plaintiff's forcible responsive reactions to the conspirators administering of controlled electronic type shocks: uncontrollable body movements, vibrations; electronic type shocks to Plaintiff's brain, hands, arms, eyes, feet, legs, etc.,*

3) *Usage of electronically controlled communication devices to transmit sounds, voices and other types and forms of communication images upon, to and against the Plaintiff, even continuous verbally communicated threats of death against the Plaintiff; without the Plaintiff's consent or approval with intentional danger to the Plaintiff's physical life, health, well-being.*

4) *Unlawful usage of interstate commerce facilities to engage in, and to carry out clearly established crimes of forced Human experimentations upon, to and against the Plaintiff <u>without any lawful authority</u>.*

5) *Unlawful usage of interstate commerce facilities to engage in, and to carry out clearly established crimes of fraud by wire, upon, to and against the Plaintiff <u>without any lawful authority.</u>*

6) *Unlawful usage of interstate commerce facilities to engage in, and to carry out clearly established crimes of aggravated assaults with a weapon in the manners used upon, to and against the Plaintiff <u>without any lawful authority.</u>*

7) *Unlawful usage of interstate commerce facilities to engage in, and to carry out clearly established crimes of attempted murder by torture upon, to and against the Plaintiff <u>without any lawful authority.</u>*

8) *Unlawful usage of interstate commerce facilities in illegal commission of and to carry out and to criminally engage in providing illegal, unlawful and criminal material support, security staffing, protection, safe housing, legal advice, and counseling to and while at all times engaged in patterns of racketeering activities, and by reasons of activities of domestic terrorism, to, upon and against the Plaintiff <u>without any lawful authority.</u>*

9) *Bribery, Extortion, Unlawful Influencing of State Officers and State Governmental Officials, <u>without any lawful authority.</u>*

10) *Torture.*

11) *Unlawful usage of interstate commerce facilities in illegal, criminal commission of and to carry out, and to criminally engage in physical torture upon, to and against the Plaintiff, <u>without any lawful authority and to unlawfully engage in the knowing of:</u>*

   a. *Violations of Oaths of Offices,*

   b. *Defarauding the Courts,*

   c. *Perjury and other falsifications,*

   d. *Tampering with a victim/witness,*

   e. *Retaliating against a victim/witness,*

   f. *Aiding and abetting,*

   g. *Conspiring to obstruct the Administration Process of Justice,*

   h. *Gross failure to exercise and to use reasonable care,*

   i. *Intentional inflictions of emotional distress,*

   j. *Gross deliberate indifference,*

   k. *Intentional inflictions of pain and suffering,*

   l. *Violations of the United States Human Rights Treaty,*

   m. *Violations of the United States Convention against torture and other cruel, inhumane and degrading treatment and punishment, and*

   n. *Violations of the United States International Covenant on Civil Rights of Prisoners.*

And as a direct effect, and unlawful, criminalized results and their continuous illegal commission of the same, the Plaintiff has been and shall continue to be ("Severely injured and aggrieved") in his person. As the Plaintiff's injuries are ("Actual and continuing"), and these named defendants, their agents, state actors, officials, organized criminal elements and ("continuous") criminal enterprises must be enjoined.

The Complaint of Criminal Acts, Crimes, Human Rights Violations, Predicate Offenses, Patterns of Racketeering Activities, Domestic Terrorism Activities, Aiding and Abetting, Torture, Attempted Murder, Aggravated Assaults, Fraud By Wire, Usage of Interstate Commerce Facilities, etc., and other unlawful Acts of Violence dangerous to the Plaintiff's Human life, which are being committed, carried out, engaged in, were and are in fact being ordered, directed, commanded, aided and assisted against Plaintiff were not committed, engaged in, nor carried out as an ("Occasional Practice"), or isolated events but at ("All") times complained of, were, have been, and are in fact now still ongoing.

The Direct Part of a conspiratorially planned and purposes of an unlawful continuity effect of an on-going, non-stop, and continuous number of ("Days, nights, weeks, months and years"), Beginning February-March 2003, and continuing unlawfully concealed by criminalized schemes, acts and crimes of obstruction, intimidation, extortion, fraud by wire, unlawful influencing of state officials, officers and employees, defrauding the Courts of The United States and of The State of Georgia, and subterfuge. These named defendants, their agents, actors, entities, functions, contracted state agents, state actors, officials, organized criminal elements and ("continuous") criminal enterprises must be enjoined.

Plaintiff will and shall in fact be met with an untimely and conspiratorially planned State-sponsored physical death if Defendants are allowed to continue such on-going above-described illegal, unlawful, criminal and unconstitutional conduct and actions against Plaintiff, as the Defendants' continuous actions against Plaintiff as described herein have no termination point other than the death of

the Plaintiff resulting therefrom, in order to unlawfully conceal and cover up such acts and crimes against him.

FURTHER AFFIANT SAYETH NOT.

Pursuant to 28 U.S.C. 1746, this Affidavit is given under penalty of perjury.

So sworn this the ____3rd____ day of _____Jan_____, 20__19__.

S/ _Ricky L. Hogan_
RICKY LAMAR HOGAN #65335
Plaintiff, Pro Se
Washington State Prison
P.O. Box 206
Davisboro, GA 31018

S/ _Patricia Deniese Davis 1/3/19_
Notary Public

S/ _____
My Official Commission Expires



# Bill Text: GA SB235 | 2009-2010 | Regular Session | Engrossed

## Georgia Senate Bill 235 *(Prior Session Legislation)*

**Bill Title:** Microchip Consent Act of 2009; prohibit requiring a person to be implanted with a microchip

**Spectrum:** Partisan Bill (Republican 4-0)

**Status:** *(Engrossed - Dead)* 2010-04-14 - House Committee Favorably Reported [SB235 Detail]

**Download:** Georgia-2009-SB235-Engrossed.html

10 LC 29 4070S (SCS)
Senate Bill 235
By: Senators Pearson of the 51st, Rogers of the 21st, Smith of the 52nd and Tolleson of the 20th

AS PASSED SENATE

### A BILL TO BE ENTITLED
### AN ACT

To provide for a short title; to amend Article 2 of Chapter 5 of Title 16 of the Official Code of Georgia Annotated, relating to assault and battery, so as to prohibit requiring a person to be implanted with a microchip; to provide for definitions; to provide for penalties; to provide for regulation by the Georgia Composite Medical Board; to provide for related matters; to provide for an effective date; to repeal conflicting laws; and for other purposes.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

### SECTION 1.
This Act shall be known as the "Microchip Consent Act of 2010."

### SECTION 2.
Article 2 of Chapter 5 of Title 16 of the Official Code of Georgia Annotated, relating to assault and battery, is amended by adding a new Code section to read as follows:
"16-5-23.2.
(a) As used in this Code section, the term:
(1) 'Implant' includes any means intended to introduce a microchip internally, beneath the skin, or applied to the skin of a person.
(2) 'Microchip' means any microdevice, sensor, transmitter, mechanism, electronically readable marking, or nanotechnology that is passively or actively capable of transmitting or receiving information. Such term shall not include pacemakers.
(3) 'Person' means any individual, irrespective of age, legal status, or legal capacity.
(4) 'Require' includes physical violence; threat; intimidation; retaliation; the conditioning of any private or public benefit or care on consent to implantation, including employment, promotion, or other benefit; or any means that causes a person to acquiesce to implantation when he or she otherwise would not.
(b) No person shall be required to be implanted with a microchip.
(c) Any person who implants a microchip in violation of this Code section shall be guilty of a misdemeanor.
(d) Any person required to have a microchip implanted in violation of this Code section may file a civil action for damages.
(e) The voluntary implantation of any microchip may only be performed by a physician and shall be regulated under the authority of the Georgia Composite Medical Board."

### SECTION 3.
This Act shall become effective on July 1, 2010.

### SECTION 4.
All laws and parts of laws in conflict with this Act are repealed.



**Nay Votes**



**Vote Smart's Synopsis:**

Vote to pass a bill that prohibits human microchip implantation without consent.

**Highlights:**

-Defines a microchip as "any microdevice, sensor, transmitter, mechanism, electronically readable marking, or nanotechnology that is passively or actively capable of transmitting or receiving information" excluding pacemakers (Sec. 2). -Prohibits consent obtained on the pretenses of physical violence, threat, intimidation, retaliation, a condition of employment or public benefit or anything that would cause a person to reluctantly agree to implantation when they otherwise would not (Sec. 2). -Establishes that the illegal implantation of a microchip is a misdemeanor (Sec. 2). -Establishes that any person who has been implanted with a microchip without giving consent can file a civil action for the damages (Sec. 2). -Requires that voluntary microchip implementation be performed by a physician and regulated by the Georgia Composite Medical Board (Sec. 2). -This act will become effective July 1, 2010 (Sec. 3).

**Note:**

NOTE: THIS IS A SUBSTITUTE BILL, MEANING THE LANGUAGE OF THE ORIGINAL BILL HAS BEEN REPLACED. THE DEGREE TO WHICH THE SUBSTITUTE BILL TEXT DIFFERS FROM THE PREVIOUS VERSION OF THE TEXT CAN VARY GREATLY.

**Full Bill Text (//static.votesmart.org/static/billtext/28838.pdf)**

**Legislation - Introduced (Senate) - March 4, 2009**

**Title:** Ban on Required Human Microchip Implantation

**Sponsors**

- Chip Pearson (GA - R) (Out Of Office)

**RATINGS**
(#)
**SPEECHES**
**SPEECHES**
(#)
**FUNDING**
**FUNDING**
(#)

# Key Votes

**SB 235 - Ban on Required Human Microchip Implantation - Georgia Key Vote**

**Timeline**

- **Feb. 4, 2010 Senate Bill Passed (#28838)**
- **March 4, 2009 Introduced (#28834)**

**Issues Related to SB 235**

- **Civil Liberties and Civil Rights (/bills/GA/2010/13)**
- **Technology and Communication (/bills/GA/2010/41)**

**Stage Details**

**Legislation - Bill Passed (Senate) (47-2) - Feb. 4, 2010(Key vote)**
See How Your Politicians Voted (/bill/votes/28838)

**Title**: Ban on Required Human Microchip Implantation

**Vote Result**



47 Yeas

**Yea Votes**

AS PASSED SENATE

# A BILL TO BE ENTITLED
# AN ACT

1  To provide for a short title; to amend Article 2 of Chapter 5 of Title 16 of the Official Code
2  of Georgia Annotated, relating to assault and battery, so as to prohibit requiring a person to
3  be implanted with a microchip; to provide for definitions; to provide for penalties; to provide
4  for regulation by the Georgia Composite Medical Board; to provide for related matters; to
5  provide for an effective date; to repeal conflicting laws; and for other purposes.

6  BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

## SECTION 1.
8  This Act shall be known as the "Microchip Consent Act of 2010."

## SECTION 2.
10  Article 2 of Chapter 5 of Title 16 of the Official Code of Georgia Annotated, relating to
11  assault and battery, is amended by adding a new Code section to read as follows:
12  "16-5-23.2.
13  (a) As used in this Code section, the term:
14     (1) 'Implant' includes any means intended to introduce a microchip internally, beneath
15     the skin, or applied to the skin of a person.
16     (2) 'Microchip' means any microdevice, sensor, transmitter, mechanism, electronically
17     readable marking, or nanotechnology that is passively or actively capable of transmitting
18     or receiving information. Such term shall not include pacemakers.
19     (3) 'Person' means any individual, irrespective of age, legal status, or legal capacity.
20     (4) 'Require' includes physical violence; threat; intimidation; retaliation; the conditioning
21     of any private or public benefit or care on consent to implantation, including
22     employment, promotion, or other benefit; or any means that causes a person to acquiesce
23     to implantation when he or she otherwise would not.
24  (b) No person shall be required to be implanted with a microchip.

27. (d) Any person required to have a microchip ~~~~~~~~~~~~~~~
28. may file a civil action for damages.
29. (e) The voluntary implantation of any microchip may only be performed by a physician
30. and shall be regulated under the authority of the Georgia Composite Medical Board."

### SECTION 3.

32. This Act shall become effective on July 1, 2010.

### SECTION 4.

34. All laws and parts of laws in conflict with this Act are repealed.